[Cite as *Batty v. Batty*, 2014-Ohio-3078.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| CHRISTOPHER G. BATTY, | : | |
| Plaintiff-Appellant, | : | CASE NO.   CA2013-06-088 |
| | : | O P I N I O N |
| - vs - | | 7/14/2014 |
| | : | |
| JULIE G. BATTY, | : | |
| Defendant-Appellee. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2012-05-0669

Courtney Caparella-Kraemer, 4841 Rialto Road, Suite A, West Chester, Ohio 45069, for plaintiff-appellant

Jeffrey S. Hale, 137½ Main Street, Milford, Ohio 45150, for defendant-appellee

**PIPER, J.**

{¶ 1}   Plaintiff-appellant, Christopher Batty (Father), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, regarding visitation rights of defendant-appellee, Julie Batty (Mother), with the couple's child.

{¶ 2}   Mother and Father were married on October 13, 2010, and had one child born issue of the marriage.  Father later filed for divorce, and the parties entered stipulations

regarding divorce issues, such as property distribution.  However, the parties continued to have disagreements regarding the care and custody of their child.

{¶ 3}  Father sought and was granted a Domestic Violence Civil Protection Order on May 25, 2012, after Mother threatened to stick a nail file up Father's nose into his brain.  The order suspended Mother's ability to see the child or to be in the marital home.  Mother went to Kentucky to stay with family, and later moved back to Ohio and moved into an apartment approximately 20 minutes from Father and the child.  Father later dismissed the protection order in June 2012, and the parties reached an agreement regarding custody, where Father was the temporary residential parent and legal custodian, and Mother had supervised visitation with the child on Monday, Wednesday, and Friday from 1:00 p.m. to 5:00 p.m.  The parties modified the agreement approximately four months after the original plan was executed.  The modified agreement gave Mother unsupervised visitation on Wednesday from 9:00 a.m. until 12:00 p.m., and each Saturday from 8:00 a.m. until Sunday at 8:00 a.m.  Each party subsequently moved for sole custody of the child, and the matter proceeded to determination by the trial court.

{¶ 4}  The trial court held a two-day hearing, during which it heard extensive testimony regarding Mother's history of drug abuse that she initially hid from Father.  The court heard testimony that in the past Mother had abused drugs in front of the child, during the time that Mother was caring for the child, and even during the time that Mother was breastfeeding the child.  The court also heard testimony that Mother had made great strides toward sobriety, and had not used drugs since before the divorce.

{¶ 5}  The trial court awarded custody of the child to Father, but ordered that Mother have ample unsupervised visitation with the child.  The court also ordered Mother to continue attending counseling sessions as part of her recovery.  Father moved the court to clarify its decision, asking that the court order random drug screenings for Mother.  However, the trial

court declined to order the drug screening. Nor did the court order Mother to provide proof that she was attending the court-ordered counseling sessions.

{¶ 6} Father now appeals the trial court's decision, raising the following assignments of error.[1] For ease of discussion, and because they are interrelated, we will address Father's two assignments of error together.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION WHEN IT FOUND THAT IT WOULD BE IN THE BEST INTEREST OF THE CHILD TO GRANT LIBERAL AND UNSUPERVISED PARENTING TIME TO THE APPELLEE/MOTHER GIVEN HER ADMITTED LONG AND RECENT DRUG USE HISTORY.

{¶ 9} Assignment of Error No. 2:

{¶ 10} THE COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION WHEN IT FAILED TO ORDER ANY DRUG SCREENING AND/OR METHOD TO SUBSTANTIATE COMPLIANCE WITH THE COURT ORDERED COUNSELING.

{¶ 11} Father argues in his assignments of error that the trial court erred by not ordering Mother to have drug screenings, by awarding Mother unsupervised visitation with the child, and not ordering Mother to provide proof that she was attending her court-ordered counseling sessions.

{¶ 12} The issue of which parent will have custody of the child is not before this court. Instead, Mother has not challenged the trial court's custody decision, and Father's challenges are specific to the trial court's order of visitation and lack of conditions/orders to ensure that Mother remains sober.

---

1. Mother did not file a brief with this court, and raises no challenge to the trial court's order regarding custody of the child.

{¶ 13} R.C. 3109.051 grants the trial court broad authority regarding visitation issues. *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2013-07-065, 2014-Ohio-646, ¶ 21. This includes "the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." *Id*. Unless the trial court concludes that parenting time is not in a child's best interest, the trial court must make a just and reasonable order permitting the nonresidential parent to have parenting time with the child at the time and under the conditions that the court directs. *Id.*; R.C. 3109.051(A).

{¶ 14} According to R.C. 3109.051(D), when determining parenting time matters,

the court shall consider all of the following factors:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to

the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child* * *;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

{¶ 15} An appellate court reviews a trial court's visitation determination for an abuse of discretion. *Toon v. Sowder*, 12th Dist. Clermont No. CA2012-02-011, 2012-Ohio-4225. An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A trial court has the ability to determine witness

credibility, as the trial court had the opportunity to observe the witnesses as they testified, their demeanor, attitude and emotion, their body language and vocal inflections. *Cottrell*, 2014-Ohio-646.

{¶ 16} Father contends that given Mother's history of drug abuse, the court should have taken appropriate measures to ensure that Mother maintain her sobriety, including random drug screening, supervised visitation with the child, and an order requiring Mother to show proof that she is attending her counseling sessions. However, after hearing two days of testimony, and considering the evidence, the trial court did not find such conditions or limitations necessary. We find no abuse of discretion in the trial court's decision, as the record indicates that the trial court expressly addressed and properly balanced the R.C. 3109.051(D) factors. As pertinent to this matter, those factors and discussion include the following.

{¶ 17} Regarding the prior interaction and interrelationships of the child with the child's parents, the record demonstrates that both parents love and are bonded with the child, and that the child loves and is bonded with both parents. The record indicates that once Father received the protection order, he has spent the most time with the child. However, Mother has consistently visited with the child once the protection order was dismissed and the parties were able to reach an agreement as to visitation.

{¶ 18} The child does not have any siblings, but does have extended family through Father and Mother. Father's father (Grandfather) provides care for the child when Father is working, and resides in Father's home during the week so as to provide care for the child. The child is bonded with Grandfather. Father's mother (Grandmother) also cares for the child on occasion, and both Grandmother and Grandfather attend medical appointments when Father takes the child to the doctor. Mother has limited the contact between her family and the child because her siblings also struggle with drug and alcohol-related issues.

- 6 -

{¶ 19} The trial court noted that the geographical locations of Mother's and Father's residences are "sufficiently close" to each other to facilitate Mother's frequent visitation with the child, and that neither party had plans to move from their current residences. The court also considered the parents' available time, including, but not limited to, each parent's employment schedule, and noted that Father works long hours as a mechanical engineer, and that Mother works from 1:00 p.m. to 10:00 p.m. Monday through Friday and one-half day on some Saturdays.

{¶ 20} The court also considered that the child, who at the time of the hearing had recently turned two, was well adjusted to Father's home. The court noted that given the child's young age, no in camera interview occurred. The court also noted that the child's young age and lack of school or extracurricular activities presented no interference with granting Mother extended parenting time.

{¶ 21} The trial court next addressed the health and safety of the child, and found that neither parent poses a threat to the child's health or safety. The court also addressed the mental and physical health of all parties, including Mother's history of drug abuse. While Father asserts that the trial court's finding and weighing of these factors is unreasonable, we disagree.

{¶ 22} The record is clear that Mother has struggled with drug-related issues. The trial court specifically addressed the previous drug use and stated that it "cannot minimize [Mother's] previous drug use while [the child's] primary caregiver; her actions were at the least, irresponsible and immature." Mother admitted during her testimony that she had abused various prescription drugs such as Percocet, Loratab, and Adderall, as well as non-prescription drugs such as ecstasy and cocaine. Mother testified that she would crush Percocet pills and snort the powder. Mother also admitted to abusing the drugs while she cared for the child, and during the time that she was breastfeeding the child. Mother also

testified that she drank alcohol too much in the past and stopped drinking because of her alcohol problem.

{¶ 23} The trial court also heard testimony that Mother has maintained sobriety since the time of the divorce, or even before. Mother called as witnesses the two people who supervised her visits with the child, and they testified that the child was safe with Mother, and that Mother acted appropriately with the child during the visits. Mother also called her friend to testify, and the friend expressed her belief that despite Mother's status as a recovering drug addict, Mother interacts appropriately with the child and is trusted around the friend's own children.

{¶ 24} Mother also called her sponsor/mentor as a witness, who testified to Mother's recovery. Mother's mentor testified that she and Mother attended meetings regularly, and the two now speak on the phone often since Mother's work schedule changed. Mother's mentor also testified that the two go to church together and speak when they are at church. Mother also testified that while she is still in ongoing recovery, she has been sober since she first entered recovery, and that she will continue her recovery by continuing to attend meetings when she can and continue to seek counseling.

{¶ 25} The trial court noted that the parties have obeyed the parenting times as agreed upon up until the time of the hearing, but that the court had concerns regarding Father's willingness to facilitate Mother's parenting time. The court noted that Father had shown manipulative behavior, including recording several conversations between himself and Mother in which Mother said inappropriate things but did not know she was being recorded or that such recordings would be used in the custody litigation. Father also prefers that Grandfather or Grandmother provide care for the child when he is at work, rather than Mother providing such care. Father has also excluded Mother from participating in the child's medical appointments, and did not give Mother the name of the child's pediatrician. The

court also noted that Father essentially evicted Mother from the marital home and from the child's life by filing the protection order. The court found that Father's testimony was not entirely credible when he stated he would facilitate Mother's parenting time.

{¶ 26} While Father disagrees with the trial court's characterization of his behavior and not being truthful about wanting to facilitate Mother's parenting time, we will not disturb the trial court's findings, as the trial court was in the best position over the two-day hearing to observe the witnesses as they testified, their demeanor, attitude and emotion, their body language and vocal inflections.

{¶ 27} After considering Mother's ongoing sobriety, the court found that it was "satisfied that [Mother] has remained drug free, has accepted responsibility for both her prior behavior and ongoing sobriety, and is continuing contact with her sponsors and other mentors." For this reason, the trial court did not order Mother to submit to random drug testing, or to provide proof that she was attending the court-ordered counseling sessions.

{¶ 28} Regarding the drug screening, the trial court first noted after the hearing was over that Mother's work schedule and distance from testing centers would make it difficult to submit to testing. The trial court further stated during the motion to clarify hearing that it did not believe that Mother's drug history was "severe enough to warrant continued drug testing, particularly with that control being through [Father]." The court noted Mother's willingness to continue in her own recovery, and did not find it necessary to order Mother to mandatorily submit to drug screens. We find no abuse of discretion in the trial court's decision.

{¶ 29} The trial court ordered that Mother continue her sobriety support by attending actual meetings once a week and maintaining contact with her sponsors and mentors. However, based on Mother's adherence to sobriety and her commitment to continuing her counseling, the trial court did not find it necessary to order that Mother show proof of her attendance at the meetings or continued communication with her sponsors and mentors.

Instead, the court suggested that Mother and Father "informally" communicate regarding Mother's continued recovery. The record indicates that Mother shows Father sign-in sheets from her meetings, and that the trial court suggested that Father could file a post-decree motion if he believes that Mother is failing to abide by the trial court's orders. We find no abuse of discretion in not ordering Mother to provide proof of her adherence to the court's orders.

{¶ 30} Regarding Father's disagreement with the trial court for not ordering supervised visitation, the record indicates that such was not necessary. In addition to the child being safe in Mother's care and Mother's continued sobriety, the parties, themselves, agreed that Mother would have unsupervised visitation as set forth in the second visitation agreement. Father agreed to two separate visitation schedules with Mother, the first with supervised visitation and the second without. While it is true that Mother was required to have supervised visitation with the child during the time that the protection order was in place and according to the first visitation agreement between the parties, Father dismissed the protection order and later agreed to unsupervised visitation. Father did not offer any evidence at the hearing to establish that the child suffered while in Mother's unsupervised care, or that Mother did anything inappropriate during her unsupervised parenting time that would require the court to reinstate supervised visitation. In fact, no testimony or evidence was offered to show that Mother's unsupervised visitation was anything but successful and in the child's best interest. As such, the trial court did not abuse its discretion in ordering that Mother have unsupervised visitation.

{¶ 31} After reviewing the record, we find that the trial court did not abuse its discretion in ordering visitation as it did, and by not ordering Mother to have random drug screening or submit proof that she is attending her counseling sessions. We are in no way discounting Father's valid concerns regarding the health and safety of his child, nor are we disregarding

Mother's history of drug abuse. However, the evidence demonstrates that Mother has maintained sobriety, is bonded with the child, and that the child's best interests are served by having visitation with Mother. This does not mean, however, that Father cannot move the court to modify visitation or its orders should Mother fall back into her "irresponsible and immature" behavior as such was deemed by the trial court.

{¶ 32} Having found no abuse of discretion in the court's orders regarding visitation, Father's two assignments of error are overruled.

{¶ 33} Judgment affirmed.

RINGLAND, P.J., and S. POWELL, J., concur.